**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

_____
)
CATALYST PHARMACEUTICALS, INC., )
)
     Plaintiff, )
v. )     Case No. 1:19-cv-22425-Bloom/Louis
)
ALEX AZAR, Secretary of Health and )
Human Services, *et al.*, )
)
     Defendants, )
)
        and )
)
JACOBUS PHARMACEUTICAL )
COMPANY, INC., )
)
     Intervenor-Defendants. )
_____ )

**<u>FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFF CATALYST
PHARMACEUTICALS, INC.'S OBJECTIONS TO REPORT & RECOMMENDATIONS</u>**

## INTRODUCTION

Federal Defendants urge the Court to adopt the well-reasoned Report and Recommendations prepared by Magistrate Judge Lauren Louis.  ECF No. 93 (R&R).  At issue here is a provision of the Federal Food, Drug, and Cosmetic Act (FDCA) that prohibits approval of a second drug that infringes on an approved drug's seven-year period of orphan drug exclusivity.  Magistrate Judge Louis correctly determined under the guiding principles of statutory interpretation enunciated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), that the text of that statutory provision is ambiguous and that the interpretation of the Food and Drug Administration (FDA), embodied in regulations promulgated through notice and comment rulemaking years before the applications at issue here were submitted to or approved by FDA, is reasonable and should be upheld.  The findings and recommendations in Magistrate Judge Louis's Report and Recommendations are grounded in the administrative record, and consistent with the FDCA and prevailing caselaw.  Therefore, Plaintiff Catalyst Pharmaceuticals, Inc.'s (Catalyst) motion for summary judgment should be denied, and Federal Defendants' motion for summary judgment should be granted.

## BACKGROUND

### I.  Factual Background

Magistrate Judge Louis correctly set out the relevant, undisputed facts.  In 2005, Catalyst received orphan designation for amifampridine (described chemically as 3,4-diaminopyridine) for the "treatment of Lambert-Eaton Myasthenic Syndrome (LEMS)."  R&R 4-5; JA-781.  In 2015, Catalyst submitted a new drug application (NDA) for its amifampridine drug, Firdapse, for the treatment of LEMS in adults.  R&R 5; JA-783-822 at JA-784.  After an initial filing review, FDA refused to file the application in February 2016.  R&R 5; JA-823-827.  Catalyst resubmitted its application for Firdapse in March 2018, it was approved for treatment of LEMS

in adults in November 2018, and Catalyst received orphan drug exclusivity for that limited use. R&R 5, 6; JA-828-830; JA-1021-1027; JA-1040-1042.

In December 1990, Intervenor-Defendant Jacobus Pharmaceutical Company, Inc. (Jacobus) received orphan designation for amifampridine for the "treatment of Lambert-Eaton myasthenic syndrome." R&R 5; JA-2-3. In 1993, Jacobus began providing its drug to patients, including pediatric patients, under an expanded access investigational new drug application. R&R 5; JA-4-20 at 7; JA-21-46, at 30, 34. In August 2017, Jacobus submitted an NDA for its amifampridine drug, Ruzurgi, for the treatment of LEMS in adult and pediatric patients. R&R 5; JA-47-50. In January 2018, after an initial review, FDA refused to file the NDA. R&R 5; JA-51-59. Jacobus resubmitted the application in June 2018, again seeking approval for its drug for the treatment of LEMS in adult and pediatric patients. R&R 5; JA-60-63.

After Catalyst was awarded orphan drug exclusivity for the treatment of adult LEMS patients in November 2018, FDA administratively divided Jacobus's application into two parts, one for the treatment of LEMS in adults and one for the treatment of LEMS in pediatric patients, to accommodate "independent actions in these populations."[1] R&R 5; JA-395. FDA then reviewed Jacobus's data and determined that it supported approval for the treatment of LEMS in pediatric patients. R&R 6; JA-326-328, 415. Before approving Ruzurgi, FDA considered whether and to what extent Catalyst's orphan drug exclusivity might affect approval of Jacobus's drug. The question was referred to the agency's Exclusivity Board, which advised that Catalyst's exclusivity blocked approval of Ruzurgi for the treatment of LEMS in adults but not

---

[1] Catalyst repeatedly references derisively what it characterizes as "FDA's" decision to "divide" or "subdivide" the LEMS patient population or Catalyst's orphan drug exclusivity to the detriment of Catalyst and the advantage of Jacobus. *See* ECF No. 94 at 1, 2, 7. While it is true that FDA administratively divided the Jacobus application to enable it to track different approval actions for different parts of the application, *Catalyst* initially "divided" the LEMS patient population by only generating data and seeking approval for its drug for the treatment of LEMS in adults.

for the treatment of LEMS in pediatric patients, and recommended approval accordingly.  R&R

6; JA-418-427.  In May 2019, FDA approved Ruzurgi for the treatment of LEMS in patients age

6 to less than 17 years old.  R&R 6; JA-428-346.

## II.   Regulatory Background

### A.  The Orphan Drug Act

As discussed in detail in Federal Defendants' opening summary judgment brief, the

Orphan Drug Act was passed in 1983 to incentivize the development of drugs to treat rare

diseases, with the main incentive being seven years of orphan drug exclusivity.  Orphan Drug

Act, Pub. L. 97-414, 96 Stat. 2049 (1983); 21 U.S.C. §§ 360cc, 360ee(b)(2)(1)(A); ECF No. 47

at 7-10; R&R 2.  The operative statutory language for the exclusivity period directs that:

**(a)** … [I]f the [FDA]—

>   **(1)** approves an application filed pursuant to section 355[2] of this title …
>
>   for a drug designated under section 360bb of this title for a rare disease or
>   condition, the [FDA] may not approve another application under section 355 of
>   this title … for the same drug for the same disease or condition for a person who
>   is not the holder of such approved application or of such license until the
>   expiration of seven years from the date of the approval of the approved
>   application or the issuance of the license.

21 U.S.C. § 360cc(a)(2).

Importantly, the process under the Orphan Drug Act by which the developer or "sponsor"

of a drug may request that FDA designate its product as an "orphan drug," rendering it eligible

for tax incentives and federal assistance in the form of grants and contracts to defray the costs of

development, often happens early in the drug development process, sometimes years before a

sponsor seeks approval of a new drug application.  R&R 2-3; 21 U.S.C. § 360bb; 26 U.S.C.

§ 45C.  Through such testing, the sponsor seeks to generate clinical data to support that the drug

---

[2] Section 355 of title 21 authorizes FDA's review and approval of drugs such as Firdapse and
Ruzurgi.

is safe and effective for particular uses or "indications," for which the sponsor will ultimately

seek FDA approval through a new drug application.   R&R 3; ECF No. 47 at 8-9.

### B.  FDA's Regulations Implementing the Orphan Drug Act

Magistrate Judge Louis correctly noted that FDA has general authority to promulgate

regulations for the "efficient enforcement" of the FDCA, as well as specific authority to

implement several of the statutory orphan drug provisions through regulations.   R&R 2, 3; 21

U.S.C. §§ 360aa(b); 360bb(d); 360cc(d).   She then recounted the history of FDA's promulgation

of its orphan drug regulations, beginning in 1991, when the agency specifically recognized that

"[a]n indication for treatment of a specific disease or condition could involve all patients with

that disease or condition or a specified subpopulation of those with the disease or condition" and

interpreted the orphan drug statute to provide that "[e]xclusive approval for a disease subset

would not bar approval of the same drug for the larger population or other subsets of populations

by different sponsors . . . ."  R&R 3; 56 Fed. Reg. 3338, 3339 (Jan. 29, 1991).

The Magistrate Judge further noted that in 2011, FDA proposed changes to its regulations

"to clarify certain regulatory language in the current orphan drug regulations and to propose

areas of minor improvement."  R&R 3; 76 Fed. Reg. 64868 (Oct. 19, 2011).  In that rulemaking,

FDA addressed "eligibility for multiple orphan-drug exclusive approvals when a designated

orphan drug is separately approved for use in different subsets of the rare disease or condition,"

explaining that when it designates a drug as an orphan drug under 21 U.S.C. § 360bb, it

"generally designates the drug for use by all persons with the rare disease or condition and

expects that a sponsor will seek approval of the drug for all persons with the rare disease or

condition."  R&R 3, 4; 76 Fed. Reg. at 64869, 64870.  However, the agency acknowledged that a

drug will ultimately be approved only for those uses "for which there is adequate data and

information to support approval," which "may be limited to subsets of patients with the orphan

disease or condition."  R&R 4; 76 Fed. Reg. at 64870.  FDA thus reiterated that it has interpreted orphan drug exclusivity to be "limited to the approved indication or use, even if the underlying orphan designation is broader."  *Id.*

Magistrate Judge Louis pointed to FDA's current regulations, finalized in 2013, which describe the scope of orphan-drug exclusivity as follows: "effective on the date of FDA approval as stated in the approval letter of a marketing application for a sponsor of a designated orphan drug, no approval will be given to a subsequent sponsor of the same drug for the same use or indication for 7 years .... A designated drug will receive orphan-drug exclusive approval only if the same drug has not already been approved for the same use or indication." 21 C.F.R. § 316.3(b)(12).

## LEGAL STANDARDS

### I.      Review of the Magistrate Judge's Findings of Fact and Conclusions of Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  The Court may "accept, reject, or modify, in whole or in part," the findings or recommendations made by the Magistrate Judge.[3]  *Id.*

### II.     Standard of Review of FDA's Decision under the Administrative Procedure Act

FDA's administrative decisions are reviewed under the APA's highly deferential "arbitrary and capricious" standard.  5 U.S.C. § 706(2)(A); *Citizens to Pres. Overton Park, Inc.*

---

[3] Although Magistrate Judge Louis mentions Claims III and IV of Catalyst's Complaint, R&R 6, she did not analyze or recommend resolution of the claims because they were not pursued by Catalyst in its summary judgment briefing.  In its Objections, Catalyst likewise does not mention Claims III and IV, focusing only on Claims I and II.  ECF No. 94 at 8.  Because Catalyst neither briefed Claims III and IV in its summary judgment papers, nor raised objections related to them in the filing made in response to the Magistrate Judge's Report and Recommendations, those claims are deemed to be abandoned.  *See Brackin v. Anson,* 585 Fed. Appx. 991, 994 (11th Cir. 2014); *Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017)

*v. Volpe*, 401 U.S. 402, 416 (1971); *Salmeron-Salmeron v. Spivey,* 926 F.3d 1283, 1286 (11th Cir. 2019).  Agency administrative decisions are entitled to a presumption of validity.  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  A reviewing court must uphold the agency's action if it is "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute."  *Motor Vehicle Manufacturers Ass'n, Inc., v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 42 (1983); *see also Overton Park*, 401 U.S. at 416.

The Court's review of FDA's interpretation of the FDCA is governed by the familiar two-step *Chevron* analysis.  If Congress "has directly spoken to the precise question at issue," that is the end of the inquiry, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842.  If the statute "is silent or ambiguous with respect to the specific issue," the Court proceeds to the second prong of *Chevron*, under which "the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  The Court need not find that the agency construction was the only one it permissibly could have adopted or even the reading the Court would have reached; so long as the agency's reading is permissible, it must be sustained.  *See Chevron*, 467 U.S. at 843-44 & n.11; *Chahaba Riverkeeper v. EPA*, 938 F.3d 1157, 1164 (11th Cir. 2019).  "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," particularly when it concerns a complex and highly technical regulatory program.  *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (quoting *Chevron*, 467 U.S. at 844); *see also Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Sarasota Mem'l Hosp. v. Shalala,* 60 F.3d 1507, 1511 (11th Cir. 1995); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 1002–03 (2005).

FDA's interpretation of ambiguous regulations is also entitled to deference, particularly in matters involving the agency's particular substantive expertise. *See Kisor v. Wilkie,* 139 S. Ct. 2400, 2417 (2019); *Auer v. Robbins,* 519 U.S. 452, 462 (1997). "Agencies (unlike courts) have 'unique expertise,' often of a scientific or technical nature, relevant to applying a regulation 'to complex or changing circumstances.'" *Kisor*, 139 S. Ct. at 2413.

## ARGUMENT

### I.     The Language of 21 U.S.C. § 360cc(a) Does Not Answer the Question Posed by This Case

#### A.  Magistrate Judge Louis Appropriately Found that 21 U.S.C. §360cc(a) is Ambiguous

Magistrate Judge Louis began her analysis of the statutory orphan drug exclusivity provision by correctly recognizing that Catalyst's and Jacobus's drugs are the "same" for purposes of 21 U.S.C. § 360cc(a)(2). R&R 5, 9. She then distilled the inquiry down to the question that is at the heart of the case: after FDA has approved an application "for a drug designated . . . for a rare disease or condition," how does the statutory proscription against "approv[ing] another application . . . for the same drug for the same disease or condition" work where, as here, the first drug's approval does not encompass the entire population with the disease or condition for which it was designated?  In other words, does the statute clearly address the scope of exclusivity when the population that suffers from the disease or condition for which the drug was designated does not match the population served by the approved use?[4] R&R 10.

_____

[4] Plaintiffs make much of Magistrate Judge Louis's framing of the issue in dispute as "whether LEMS in adults and pediatric patients constitutes the same 'disease or condition.'"  R&R 9-10. It is true that Federal Defendants do not contend that LEMS in adults is a different disease, medically, from LEMS in pediatric patients. *See, e.g.,* JA-426.  However, it is clear from Magistrate Judge Louis's full Report and Recommendations that she analyzed the question of statutory interpretation before the Court consistently with Defendants, finding that "Congress has

Analyzing the statutory language under the familiar precepts announced in *Chevron,* Magistrate Judge Louis correctly concluded that the statutory language in 21 U.S.C. § 360cc is silent as to scope of exclusivity under these facts because Congress did not speak to the precise question at issue.  R&R 9-11.  The statute simply does not speak to the circumstances here, where Catalyst received designation for the treatment of LEMS, but only sought and obtained approval for the treatment of LEMS in adults.[5]

Catalyst's attacks on the Magistrate Judge's analysis are not persuasive.  First, Catalyst asserts that Magistrate Judge Louis failed to "employ[ ] the traditional tools of statutory construction" by failing to apply the plain statutory text to the facts of this case.  ECF No. 94 at 10-11.  Magistrate Judge Louis did not fail to consider the plain statutory text; rather, she found that the text was ambiguous because the statute does not address how to apply exclusivity when a drug is approved for only a certain subpopulation within the original designation.  R&R 10-11.

Similarly refutable is Catalyst's contention that Magistrate Judge Louis's application of *Chevron* is "significantly out of step with current administrative law doctrine."  *Id.* at 10. Essentially, Catalyst finds fault with the Magistrate Judge's analysis because she did not reach the same conclusion that the *Eagle* and *Depomed* courts did in analyzing the same statutory provision.  *Id.* at 11, 14, 17-19.  But as Magistrate Judge Louis correctly recognized, those cases presented different statutory questions.  R&R 11-12.  In *Depomed,* the question before the court was whether FDA properly refused to grant exclusivity to Depomed's drug when the same drug,

---

[4] not directly spoken to the precise question at issue," and therefore proceeding to *Chevron,* step two.  R&R 12 (internal quotations omitted).

[5] Indeed, as Federal Defendants pointed out in their opening brief in support of summary judgment, 21 U.S.C. § 360cc(a) actually lacks language that requires that the approval of "an application filed pursuant to section 355" referenced in 360cc(a)(1) be *for* the designated orphan disease or condition.  ECF No. 47 at 14-15.  Despite the statute's lack of clarity, FDA's understanding of how this provision works in factual situations like that presented here is long-standing, reasonable, embodied in a regulation promulgated through notice and comment rulemaking, and easily fits within the statutory language.

whose manufacturer had not sought orphan drug designation, was already on the market for the same use, based on the agency's regulation requiring "clinical superiority" of the second drug in such circumstances. *Depomed, Inc. v. United States Dep't of Health & Human Servs.*, 66 F. Supp. 3d 217, 223-226 (D.D.C. 2014). The district court found that because FDA had designated plaintiff's drug for a rare disease or condition and the drug was subsequently approved for that rare disease or condition, the then-existing plain language of the statute required that orphan drug exclusivity be granted. *Id.* at 230-231. In *Eagle*, following on the decision in *Depomed,* a D.C. district court interpreted the same pre-amendment language of 21 U.S.C. § 360cc to be clear in not limiting "serial" or successive periods of orphan drug exclusivity. *Eagle Pharm., Inc. v. Azar*, 2018 WL 3838265, *6-7 (D.D.C. June 8, 2018). The *Eagle* district court decision was affirmed by the Court of Appeals on these same grounds. *Id.*, *aff'd* 952 F.3d 323 (D.C. Cir. 2020), *pet. for reh'g en banc denied* (Aug. 17, 2020).

Neither the *Eagle* nor the *Depomed* court was presented with the question of what to do when an orphan drug's designation is broader than the orphan use for which it is approved. *Eagle,* 2018 WL 3838256 *3; *Depomed,* 66 F. Supp. at 226. Thus, those decisions do not speak to the matter at hand. That those courts found the statutory text to be clear as to one issue (successive periods of exclusivity) does not mean it is clear as to another. R&R 11; *see also In re: BFW Liquidation, LLC,* 899 F.3d 1178, 1188 (11th Cir. 2018) (interpreting ambiguity of statute in light of "the particular dispute in the case").

No more well-founded is Catalyst's critique of Magistrate Judge Louis's characterization of the statute as "silent" on the scope of exclusivity when a drug is approved for an indication that is narrower than the disease or condition for which the drug was designated. ECF No. 94 at 18-19. While it may be true that a statute need not *expressly* address a particular question to be controlling as to its outcome, here, the statute neither expressly nor implicitly answers the

question.  And whether one characterizes the operative text as "ambiguous" or the lack of direction as "silence" is a semantic distinction:  the point is that the statute does not by its language command a particular result here.

More instructive are the D.C. and Fourth Circuit Courts of Appeal decisions in *Spectrum Pharmaceutical, Inc. v. Burwell,* 824 F.3d 1062 (D.C. Cir. 2016) and *Sigma-Tau Pharmaceutical, Inc. v. Schwetz,* 288 F.3d 141 (4th Cir. 2002).  In those cases, which both considered whether a drug's orphan exclusivity for a specific indication blocked approval of a generic drug for a different indication that was not covered by exclusivity, the courts expressly recognized that FDA approves drugs for "indications" and that the scope of orphan drug exclusivity is properly commensurate with the approved indication – only approved indications enjoy protection from marketing competition.  *See Spectrum Pharm.,* 824 F.3d at 1064; *Sigma-Tau Pharm.,* 288 F.3d at 145 ("The statute as written protects uses, not drugs for any and all uses;" "Section 360cc(a) simply provides that FDA 'may not approve' generics for a protected indication;" The Orphan Drug Act "is clearly directed at FDA-approved use.").

Catalyst's arguments relating to the "clinical superiority" exception similarly fall wide of the mark.  ECF No. 94 at 2, 17.  No one is arguing that Jacobus's drug was approved on that basis.  The question is not whether any of the statutory exceptions that permit a second applicant to "break" an approved sponsor's exclusivity apply; at issue here is the scope of the exclusivity in the first instance.  Thus, there was no reason for Magistrate Judge Louis to analyze the "clinical superiority" exception to orphan drug exclusivity.

For the reasons set forth above and in Federal Defendants' opening and reply briefs in support of their motion for summary judgment, Magistrate Judge Louis was correct to conclude that 21 U.S.C. § 360cc is silent with respect to the precise question at issue.

### B.   Catalyst's Objections Are Meritless

In urging the Court to reject FDA's statutory interpretation, Catalyst offers what it characterizes as "six fatal flaws" with that interpretation,  ECF No. 94 at 14-19, none of which has merit.  Catalyst first posits that the phrase "same disease or condition" is not ambiguous because Congress has explicitly defined this term.  While the statute defines the phrase "rare disease or condition" by setting out when a disease is sufficiently "rare," the statute does not define the phrase "disease or condition" standing alone.  *See* 21 U.S.C. § 360bb(a)(2).[6]

Catalyst next avers that "nothing about the interplay" of the orphan drug designation and exclusivity provisions renders the exclusivity provision ambiguous.  ECF No. 94 at 14.  However, Courts are required to consider words "in their context and with a view to their place in the overall statutory scheme."  *King v. Burwell*, 576 U.S. 473, 486, (2015); *see also Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1305 (11th Cir. 2001) (holding that when evaluating ambiguity courts consider the context of the statute as a whole).  In 21 U.S.C. § 360cc(a), Congress refers both to a drug being *designated* for a disease or condition, and a drug being *approved* for a disease or condition.  This introduces ambiguity, as under the FDCA's drug approval framework, FDA does not approve drug applications for "diseases or conditions;" rather, FDA approves applications for specific "indications" or "uses."  *See* 21 U.S.C. § 355(d); 21 C.F.R. § 314.50(a)(1).  And though the first use of the phrase "disease or condition" in

---

[6] Catalyst avers that FDA interprets "disease or condition" to mean "disease or condition, *unless FDA* decides at some point later in the process to limit the scope of exclusivity."  But Catalyst's argument ignores that the statutory exclusivity provision, 21 U.S.C. § 360cc(a)(1), refers to approval of an "application," and that the FDCA and FDA's regulations make clear that a drug sponsor proposes a particular use or uses for its drug in a new drug application.  *See* R&R 13, 3; 21 U.S.C. § 355(d); 21 C.F.R. § 314.50(a)(1) (requiring a new drug application to include the new drug's proposed indications for use); ECF No. 47 at 17-22,  21 n. 7.  In turn, FDA's regulations provide that the scope of a drug's orphan drug exclusivity is commensurate with the orphan indication or use for which the drug is approved. 21 C.F.R. § 316.31.  FDA does not determine the scope a particular drug's orphan exclusivity on a whim; it is based on the orphan indications or uses approved in a sponsor's application.

section 360cc(a) refers specifically to the designation provision, section 360bb(a), the designation provision itself, anticipates that a drug will ultimately be approved for a specific "use." 21 U.S.C. § 360bb (permitting the orphan designation of a drug "if" a subsequent "approval" of a drug application "would be for *use* for [the designated] disease or condition" (emphasis added)). This language creates ambiguity as to the scope of exclusivity where, as here, a drug is not approved for all of the populations or uses within a disease or condition for which it was designated; the statute is silent in that regard. *See* ECF No. 47 at 14-16.

Catalyst's third point focuses on the absence of language in 21 U.S.C. § 360cc(a) expressly tying the scope of orphan drug exclusivity to the scope of approval. *Id*. at 15. But the absence of this language does not answer the question presented here. The references to drug approval pursuant to 21 U.S.C. § 355 in 21 U.S.C. § 360cc tie orphan drug exclusivity to the particular indications or uses approved by FDA in a new drug application submitted under 21 U.S.C. § 355. The presence of language tying exclusivity both to a designated disease or condition and to approval under section 355 (inherently for a specific "use"), creates ambiguity when the designation and approved indication are not coextensive.[7]

Fourth, Catalyst argues that because Congress used the terms "use" and "indications" elsewhere in the FDCA and does not use those terms in 21 U.S.C. § 360cc(a), it cannot have meant to limit exclusivity to approved orphan indications. ECF 94 at 16. FDA addressed this argument in its opening summary judgment brief: the references to drug approval pursuant to 21 U.S.C. § 355 in 21 U.S.C. § 360cc tie orphan drug exclusivity to the particular indications or

---

[7] Catalyst contends that FDA's interpretation of the scope of orphan drug exclusivity contradicts what Catalyst was told by FDA at the time of designation – that if the company's approval was broader than its designation, it may not be eligible for orphan drug exclusivity. ECF No. 94 at 16. Catalyst's assertion does not bear scrutiny. The quoted sentence from the designation letter at JA-781 cites to the orphan drug statute and alludes to the Congressional limitation on what qualifies as an "orphan disease or condition."

uses approved by FDA in a new drug application submitted under 21 U.S.C. § 355 – uses that

may or may not completely coincide with an entire rare disease or condition, ECF No. 47 at 20-

21 and n. 7.  And again, Congress *did* make reference to "uses" in the designation provision of

the Orphan Drug Act, providing that the FDA may designate a drug "for a rare disease or

condition" *if* the drug's eventual marketing approval "would be *for use* for such disease or

condition."  21 U.S.C. § 360bb(a)(1).

In its fifth argument, made for the very first time in its Objections, Catalyst leans heavily

on the use of the singular article "a," which modifies "disease or condition" in the definition of

"qualified testing," arguing that the definition "explicitly" supports its statutory construction

argument.[8]  ECF No. 94 at 16-17; 21 U.S.C. § 360ee(b)(1).  That Congress sought to incentivize

the development of orphan drug therapies for the entire patient population afflicted by a

particular rare disease or condition does not answer the question of the scope of exclusivity when

a sponsor fails to achieve that expectation.  The statute does not speak to this question, and

FDA's determination, set out in duly promulgated regulations, which rests the scope of orphan

drug exclusivity on the approved orphan indication is certainly a reasonable choice supporting

the statute's purpose because it rewards sponsors for the uses they invested in successfully

developing, while preserving the incentive to continue to develop treatment for other populations

suffering from, or for other stages within, a rare disease or condition.  *See* ECF No. 47 at 22.

Catalyst's sixth and final argument rests on the three statutorily-recognized circumstances

in which a sponsor's orphan drug exclusivity may be "broken" by a second applicant, none of

which apply here.  Catalyst mischaracterizes FDA's approval of Jacobus's drug as creating an

---

[8] Federal Defendants urge the Court to exercise its discretion not to consider this argument, raised for the first time in Catalyst's Objections to the Magistrate Judge's Report and Recommendations, particularly in light of the nearly half dozen briefs previously filed by Catalyst in this case.  *See Williams v. McNeil,* 357 F.3d 1287, 1292 (11th Cir. 2009).

extra-statutory exception to the orphan drug exclusivity period promised in the statute. But the premise of Catalyst's argument – that the statute dictates that the scope of orphan drug exclusivity is defined by its drug's designation – is wrong. As Magistrate Judge Louis found, the statute is silent as to the scope of exclusivity when the approval does not match the designation. R&R 12. In the face of that silence, FDA applied its regulations to the facts before it and properly approved Jacobus's drug for an indication not covered by Catalyst's orphan drug exclusivity.

## II.  The Magistrate Judge Correctly Found FDA's Interpretation to be Reasonable

Notably absent from Catalyst's Objections is any argument that, if § 360cc(a) is ambiguous or silent with respect to the precise question at issue, Magistrate Judge Louis improperly determined that FDA's statutory interpretation should be upheld under *Chevron* step two. Accordingly, if the Court determines that the language of 21 U.S.C. § 360cc(a) is silent or ambiguous, the Court can uphold the interpretation of that provision without further analysis. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150 (1985) (district court need not review a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings); *Patton v. Rowell,* 2017 WL 443634.

If the Court considers the reasonableness of FDA's statutory interpretation under *Chevron* step 2, notwithstanding Catalyst's failure to object to it, the Court should uphold the agency's interpretation, consistent with Magistrate Judge Louis's analysis. R&R 12-13. Magistrate Judge Louis correctly concluded that FDA's statutory interpretation is entitled to deference and is reasonable for two reasons: first, it "fits closely with the statute's text" and second, it conforms to the purpose of the Orphan Drug Act. *Id.* On the first point, Magistrate Judge Louis pointed to language in the *Sigma-Tau* case discussed above, which ties orphan drug exclusivity to "uses," not drugs. R&R 13. She also noted that 21 U.S.C. § 360cc(a) refers to

approval of an "application," which necessarily "directs the FDA to evaluate what is written on the application," *id.;* in turn, the FDCA and its implementing regulations make clear that new drug applications seek approval for specific indications. *See* 21 U.S.C. § 355(d) (1) (new drug application may not be approved if, among other things, the data in the application does not support that the drug is safe and effective "under the conditions prescribed, recommended, or suggested in [its] proposed labeling"); 21 C.F.R. § 314.50(d)(5)(ii), (v) (requiring new drug application to include a description and analysis of each clinical study "pertinent to a proposed use," as well as a summary of effectiveness data for each "claimed indication"). Faced with statutory ambiguity, FDA made the common sense decision to use the first drug's approved orphan indication or use as the basis for determining the scope of orphan drug exclusivity, consistent with 21 U.S.C. § 355(d) and its new drug application regulations at 21 C.F.R. § 314.50. *See* 21 C.F.R. § 316.31; *see also* ECF No. 47 at 10-14. Magistrate Judge Louis's conclusion that FDA's interpretation hews closely to the statutory text is exactly right.

Second, Magistrate Judge Louis determined that FDA's statutory interpretation conforms with the Orphan Drug Act's purpose because it both rewards a sponsor who develops a drug for an orphan use and leaves intact the incentive for that sponsor or another to further develop the drug to treat populations suffering from the disease who are yet unserved.[9] R&R 13-14; *see also* ECF No. 47 at 20-22. If Catalyst were to prevail in obtaining exclusivity that blocked Jacobus's approval for treatment of LEMS in pediatric patients, not only would Catalyst receive a "windfall" by getting exclusivity beyond the use it invested resources to develop, but the result would undermine the purpose of the Orphan Drug Act by eliminating the incentive for Catalyst

---

[9] Catalyst asserts that policy issues are not properly considered as part of a *Chevron* step one analysis, *see* ECF No. 94 at 19, n. 13, but of course, consideration of a statute's purpose is perfectly legitimate where, as here, a court is reviewing an agency's interpretation of a statute that is silent or ambiguous on the matter in question. *Chevron,* 467 U.S. 837, 845 (1984).

or any other company to further develop the drug, in this case, to treat vulnerable pediatric patients.  In fact, under Catalyst's approach, the incentive would be to obtain the broadest designation possible and to seek approval for only the narrowest use within that broad designation in order to block approvals of drugs for all other uses within the broader designated use — a result clearly contrary to the purpose of the Orphan Drug Act.

Finally, Catalyst raises a second argument for the first time in its Objections, arguing that even if 21 U.S.C. § 360cc(a) is ambiguous, FDA's interpretation is foreclosed.  *Id.* at 15, n. 11. This Court has previously noted that a footnote is "the wrong place for substantive arguments on the merits of a motion" and has declined to consider arguments on this basis.  *Mazzeo v. Nature's Bounty, Inc.*, No. 14-cv-60580, 2014 WL 5846735, at *2 n.1 (S.D. Fla. Nov. 12, 2014).  In any case, this argument fails, as neither of the cases cited by Catalyst supports that proposition.  In *Abbott Labs v. Young*, 920 F.2d 984, 988 (D.C. Cir. 1990), the D.C. Circuit found a particular statutory provision providing periods of exclusivity to developers of drugs that contained new chemical entities to be ambiguous because it could be read in at least two different ways.  But the court rejected *both* FDA's and the plaintiff's proposed interpretations, finding FDA's to be "linguistically infeasible" and the plaintiff's to be unreasonable.  Indeed, the court specifically recognized that the ambiguity could give rise to "other possible reasonable constructions" and that the agency must be given an opportunity to choose among such alternatives.  *Id*.  Particularly on point to this case is the D.C. Circuit's comment in rejecting the expansive scope of exclusivity urged by the plaintiff:  "Abbott's reading promotes neither the interests of the research-oriented pharmaceutical industry nor the generic drug industry in a rational way, producing instead a windfall depending on an accident of chemical nomenclature. We have not been offered *any* scientific, technical, economic or other explanation why Congress would intend the [statutory interpretation advanced by Abbott]."  *Id.* at 989.  Neither does *Mova Pharmaceuticals*

*Corporation v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998), ECF No. 94 at 15, n. 11, bolster

Catalyst's case; there, the court rejected a statutory interpretation FDA found to be consistent

with the statute's purpose, finding the clear text controlled.  Nothing in either of these cases can

remotely be read to limit FDA's authority to adopt a reasonable interpretation of this ambiguous

statutory language.

For the forgoing reasons and those set forth in Federal Defendants' opening and reply

briefs in support of their cross motion for summary judgment, FDA's statutory interpretation

should be upheld.

### III.   The Magistrate Judge Correctly Determined that Catalyst's Claim Relating to Jacobus's Labeling Is Without Merit

Magistrate Judge Louis correctly concluded that Catalyst's claim that FDA violated its

labeling regulations, 21 C.F.R. § 201.57(c)(2)(iv), (15)(i), in approving Jacobus's new drug

application is without merit.  R&R 14-16.  Catalyst does not claim that the regulations

themselves are arbitrary, capricious or contrary to law.  Rather, like the plaintiff in *Sigma-Tau,*

Catalyst challenges the agency's application of the regulations to the facts of this case.  *See*

*Sigma-Tau,* 288 F.3d at 146.  As the Fourth Circuit and Magistrate Judge Louis noted, judicial

review of an agency's application of its regulations is highly deferential, particularly where, as

here, the matter involves "a complex and highly technical regulatory program."  *Id. quoting*

*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994); *Dep't of Commerce v. New York,*

139 S. Ct. 2551 (2019); R&R 15.

As the Magistrate Judge noted, the administrative record reflects that multiple divisions

within FDA carefully reviewed all aspects of several versions of Jacobus's proposed labeling and

determined that it met the statutory and regulatory standards for approval as part of Jacobus's

new drug application.  R&R 15-16; *see also* ECF No. 47 at 27-29.

18

In reviewing Jacobus's labeling, FDA harmonized its regulatory requirements providing that the adequate and well-controlled studies and additional information supporting approval be fully described, *see* 21 C.F.R. §§ 201.57(c)(9)(iv)(D) (specifically contemplating that pediatric drugs may be approved based on studies in adults combined with other data supporting pediatric use) and 201.57(c)(15), with the direction that the labeling may not imply or suggest indications for which the drug is not approved, *id.* at §§ 201.57(c)(2) and 201.57(c)(15).

Jacobus's approved labeling clearly indicates the use for which the drug is approved: "**1 INDICATIONS AND USAGE** RUZURGI is indicated for the treatment of Lambert-Eaton myasthenic syndrome (LEMS) in patients 6 to less than 17 years of age." A.R. at 494. The "**DOSAGE AND ADMINISTRATION"** section provides dosing only for "Pediatric patients 6 to less than 17 years of age weighing 45 kg or more" and the same age patients "weighing less than 45 kg," *id.,* and the instructions for dosing and pharmacokinetic information are specific to pediatric patients (*id.*at 495, 501). Contemplating the label as a whole, the label is clearly tailored to pediatric use and does not suggest that Ruzurgi be used for adults.

Whether a drug's labeling contains the information required to support safe and effective use without improperly suggesting unapproved uses is obviously a nuanced judgment that relies on scientific and medical expertise and a sophisticated understanding of the setting in which prescription drug labeling is accessed by healthcare professionals and used to make prescribing decisions. This is precisely the sort of complex, technical judgment FDA is charged by Congress with making under the FDCA.

No more well-founded is Catalyst's assertion that Magistrate Judge Louis somehow "misunderstood" Catalyst's misbranding argument. ECF No. 94 at 20. The portion of the sentence from the Report and Recommendations quoted by Catalyst—suggesting that Catalyst fundamentally complains about the basis for FDA's efficacy finding—shows that Magistrate

Judge Louis indeed understood Catalyst's argument.  Jacobus's efficacy data consists of clinical trials in adults, along with additional clinical experience, dosing, and safety data from pediatric patients.  JA-400-JA-408.  While Catalyst does not directly challenge the efficacy (or safety) of Jacobus's drug product, it mounts a round-about attack, asserting that labeling information about the adult clinical trials violates FDA's regulations "as a matter of law" because it suggests that Jacobus's drug is safe and effective for use in adult LEMS patients.  *See* ECF No. 94 at 19; ECF No. 38 at 20.  If Jacobus's labeling were to omit this information, Catalyst would undoubtedly claim that Jacobus's labeling violated those same regulations, this time because it failed to "discuss those clinical studies that facilitate an understanding of how to use the drug safely and effectively."  21 C.F.R. § 201.57(c)(15).  Magistrate Judge Louis correctly discerned that if Catalyst's view were to prevail, Jacobus would be unable to fashion labeling that is compliant with FDA's labeling regulations, thereby effectively undercutting the approval.  She properly rejected Catalyst's circuitous attack on FDA's approval of Jacobus's drug, finding that the record demonstrated that FDA adequately considered and "articulated a sufficient rationale for" approving Jacobus's labeling.  R&R 16.

## IV.  Magistrate Judge Louis's Determination that FDA Did Not Consider Price in Approving Jacobus's Drug is Supported by the Administrative Record

Magistrate Judge Louis correctly determined that FDA did not improperly rely on the price of Catalyst's drug in approving Jacobus's drug.  R&R 17.  Magistrate Judge Louis's conclusion that the documents added to the administrative record at Catalyst's behest establish awareness of, but not reliance on, the public controversy surrounding the price of Catalyst's drug, R&R 18, is well-reasoned, supported by the record, and should be adopted by the Court. Catalyst

In criticizing the Magistrate Judge's conclusion, Catalyst conflates the standard for including a document in the administrative record with the standard for determining whether an

agency action is arbitrary and capricious.  If the standard for inclusion of a document in the administrative record were the same as the standard for establishing improper reliance on that document, as Catalyst urges, ECF No. 94 at 10, agency action would be easily defeated by the mere submission to the agency of comments or other data containing information that the agency may not legally factor into the decision at hand.  Catalyst's legal stance is not in accord with the law of the circuit and should therefore be rejected.  *Georgia Dep't of Ed. v. United States Dep't of Ed.*, 883 F.3d 1311, 1314 (11th Cir. 2014) (agency action is arbitrary and capricious if, among other things, if "relied on" factors Congress did not intend it to consider).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Federal Defendant's opening and reply briefs in support of their cross motion for summary judgment, the Court should deny Catalyst's motion for summary judgment and grant judgment in favor of Federal Defendants.

## RESPONSE TO RULE 7.1(b) REQUEST FOR HEARING

Federal Defendants do not believe a hearing is necessary to resolve this case, given the extensive briefing by the parties and the Report and Recommendations by Magistrate Judge Louis.  Regarding Catalyst's contention that FDA's action is unprecedented, Federal Defendants note that FDA's decision is consistent with regulations that were finalized in 2013, and with prior judicial and administrative precedent.  *See* ECF No. 47 at 19-20.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

DANIEL J. FEITH
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director

HILARY K. PERKINS
Assistant Director

/s/ *Ann F. Entwistle*
ANN F. ENTWISTLE (Court ID
 #A5502557)
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044-0386
Telephone: (202) 304-3630
Fax: (202) 514-8782
Ann.F.Entwistle@usdoj.gov

Of Counsel:

ROBERT C. CHARROW
General Counsel
Department of Health and Human Services

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
Department of Health and Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation
Food and Drug Administration

BARBARA ALKALAY
Senior Counsel
Food and Drug Administration

10903 New Hampshire Avenue
Silver Spring, MD 20993-0002

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2020, I filed the foregoing document with the Clerk of Court via the CM/ECF system, causing it to be served on Plaintiff's and Intervenor Defendant's counsel of record.

September 3, 2020

*/s/ Ann F. Entwistle*
*ANN F. ENTWISTLE (Court ID #A5502557)*
*Trial* Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044-0386
Telephone: (202) 304-3630
Fax: (202) 514-8782
Ann.F.Entwistle@usdoj.gov